S90A0331. DEPARTMENT OF CORRECTIONS v. COLBERT.
(391 SE2d 759)

CLARKE, Chief Justice.
In 1984 the Warden of Georgia State Prison (GSP) issued Policy

---

Statement Number 230.1 which included, inter alia, provisions for drug screening by urinalysis of any employee suspected of violating GSP's drug and alcohol policy. The Policy Statement also provided for weekly drug screening of fifteen GSP employees chosen at random. The Policy Statement applies to all GSP employees and provides that any employee who has a positive test result indicating he was on duty or was present on GSP property with illegal drugs in his system shall have his employment terminated. The Policy Statement provides that the employment of any employee refusing to submit to drug screening will be terminated.

Appellee, the fire chief at GSP, tested positive for marijuana during a random drug test; thereafter GSP terminated his employment. Appellee's administrative appeals affirmed the decision to terminate, but the superior court reversed. The trial court determined that the random drug testing policy set out in Policy Statement Number 230.1 is unconstitutionally overbroad in that it applies to every employee of GSP. We granted the Department of Correction's application to appeal.

1. We first consider the trial court's ruling that Policy Statement Number 230.1 is unconstitutional.

In *City of East Point v. Smith*, 258 Ga. 111 (365 SE2d 432) (1988), we upheld the drug testing of police officers. We concluded that drug use by police officers undermined public confidence in the integrity of the police force, and further, drug use by employees authorized to carry weapons endangered their fellow employees and the public.

Following *City of East Point*, the United States Supreme Court upheld drug testing of railroad employees who were involved in accidents or who had violated safety rules, *Skinner v. Railway Labor Executives Assn.*, 489 U. S. _____ (109 SC 1402, 103 LE2d 639) (1989). In *National Treasury Employees Union v. Von Raab*, 489 U. S. _____ (109 SC 1384, 103 LE2d 685) (1989), the Court upheld the random drug testing of U. S. Customs employees involved in the enforcement of drug-related laws. In these cases the Court concluded that the Fourth Amendment does not require a search warrant to test for drugs by way of urinalysis, and further that there is no need to focus on individualized suspicion of the employee to be tested where it is shown that the employee is involved in activities where drug use would pose a threat to the public or fellow employees. In each of these cases the Court held that the employee's right to privacy must be weighed against the government's interest in testing the employee for drugs.

Addressing the case before us, we note that the state has a compelling interest in ensuring that all persons in the employ of prisons are of uncompromised integrity because of their potential access to

prisoners. The record shows that there are areas of the prison to which all GSP employees may enter unescorted and potentially encounter prisoners. The Warden of GSP testified that there is no prison policy requiring that anyone, other than an inmate, be escorted by a security guard through secured areas of the prison.[1] Further, the Warden testified that there has been a history of GSP employees, including "administrative staff, school teachers and maintenance staff," bringing illegal drugs onto GSP premises. We further note that the prisons of this state are filled with persons with illegal drug problems. Allowing prison employees to use or possess illegal drugs while on prison premises poses risks to security and good order. The very nature of a prison coupled with the pervasiveness of drugs in the criminal community demands strict regulation.

Considering all of these circumstances we hold that the state's interest in preventing illegal drug use by GSP employees outweighs the privacy rights of those employees. Therefore the random drug testing policy in question is not unconstitutionally overbroad.

2. Notwithstanding our holding in Division 1, this case is controlled by the issue of whether the Warden of GSP, acting independently of the Board of Corrections, has the authority to institute a policy of random drug testing.

OCGA § 42-2-11 (d) provides that it is the duty of the Board of Corrections to adopt rules and regulations governing the conduct of employees of the prison system. The statute further provides that the Board shall prescribe the conditions of work for employees in institutions operating under the authority of the Board. Pursuant to this statutory authority the Board adopted Rule 125-2-1.01 which provides,

> Efficient and effective direction and management of assigned human resources shall be the direct responsibility of wardens/superintendents and supervisory personnel at each level.

The Department argues that this Rule gives the Warden of GSP the authority to require random drug testing of his employees. We do not agree.

We hold that a rule authorizing the Warden to "direct and manage" employees does not encompass the authority to order employees to submit to random drug testing. Rules regarding the "conduct" and "conditions of work" of employees of the various penal institutions are to be made by the Board of Corrections. OCGA § 42-2-11 (d).

---

[1] There was conflicting testimony from correctional officers as to whether, as a practical matter, any employee of GSP could walk throughout the prison unescorted.

OCGA § 42-2-11 (a) provides that it is the duty of the Board to "establish the general policy to be followed by the Department [of Corrections]." Therefore, we hold that any rule regarding drug testing of the employees of a penal institution operating under the authority of the Board of Corrections must be promulgated by the Board rather than by the warden of the institution.

*Judgment affirmed. All the Justices concur, except Smith, P. J., and Benham, J., who concur specially.*

SMITH, Presiding Justice, concurring specially.

I concur in Division 2 of the majority opinion and the judgment. However, in answer to Division 1, I cite my dissent in *City of East Point v. Smith*, 258 Ga. 111 (365 SE2d 432) (1988).

BENHAM, Justice, concurring specially.

While I concur in Division 2 of the majority opinion and in the judgment, I cannot concur in Division 1 because I do not believe it was necessary to reach the constitutional issues decided in that division.

DECIDED MAY 24, 1990 —
RECONSIDERATION DENIED JUNE 21, 1990.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Senior Assistant Attorney General,* for appellant.
*Lamar Murdaugh, Jr.,* for appellee.